IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYLVESTER MOORE, | No. C 14-3608 DMR (PR) |
| Plaintiff, | **ORDER OF SERVICE; PARTIAL DISMISSAL; AND DENYING PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL** |
| vs. | |
| DR. M. MAGAT, et al., | |
| Defendants. | |

Plaintiff, a federal prisoner who is currently incarcerated at the Nevada Southern Detention Center, has filed a *pro se* civil rights action pursuant to 42 U.S.C. § 1983,[1] alleging constitutional violations at Santa Rita Jail ("SRJ") and the Glenn E. Dyer Detention Facility ("Glenn Dyer"), where he was housed as a federal pre-trial detainee. Dkt. 1. Plaintiff has consented to magistrate judge jurisdiction, and this matter has been assigned to the undersigned Magistrate Judge. Dkt. 6. Plaintiff has filed a motion for leave to proceed *in forma pauperis*, which will be granted in a separate written Order. Also before the Court is Plaintiff's motion for appointment of counsel. Dkt. 3.

Venue is proper because the events giving rise to the claims are alleged to have occurred at SRJ and Glenn Dyer (both run by the Alameda County Sheriff's Department) in Alameda County, which is located in this judicial district. *See* 28 U.S.C. § 1391(b).

In his complaint, Plaintiff names multiple jail officials from the Alameda County Sheriff's

---

[1] In the title of his complaint, Plaintiff claims that he has filed the instant action pursuant to § 1983 "or [as a] *Bivens* action." Under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 392-97 (1971), a private right of action may be implied from the Constitution itself for allegations of constitutional violations made against *federal* employees. Because the instant action does *not* involve *federal* employees, *Bivens* is not applicable. Thus, the Court construes this action as being filed pursuant to only § 1983, which involves claims against *state* actors and their agents.

Department and employees of Corizon Health, Inc. ("CHI"), which is contracted to provide medical care for jail inmates, including: CHI Medical Doctors M. Magat, Melgarejo, Tan Sing, and Jose Aramburo; CHI Registered Nurses Corazon V. Beltran and Maria Sadri; CHI Nurse Collie Comfort; CHI Nurse Practitioner Spring Cerise; Sergeant Ladner; and Deputies Anderson, Tilley, and Rojas. Plaintiff also names Doe Defendants, including: Intake/Receiving Staff "John Doe #1"; CHI Charge Nurse "John Doe #2"; and "PM Pill Call Nurse "John Doe #3." Plaintiff seeks injunctive relief and monetary damages.

## DISCUSSION

### I.     Standard of Review

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### II.    Legal Claims

#### A.     Injunctive Relief Claims

Plaintiff seeks both injunctive relief and money damages (including compensatory and punitive damages). The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Where injunctive relief is involved, questions of mootness are

determined in light of the present circumstances. *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

When an inmate has been transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). A claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to overcome mootness. *Id.*

When Plaintiff filed his original complaint, he alleged unconstitutional conditions of confinement during the period of his confinement at either SRJ or Glenn Dyer from February 2014 through August 2014. As mentioned above, Plaintiff seeks injunctive relief to remedy these alleged injuries. However, Plaintiff has since been transferred to the Nevada Southern Detention Center. Dkt. 11. Because Plaintiff is no longer incarcerated at either SRJ or Glenn Dyer, to the extent he seeks injunctive relief from the conditions of his confinement at either jail, those claims are DISMISSED as moot. The Court proceeds to review Plaintiff's remaining claims for damages.

### B. Deliberate Indifference Claim

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A pre-trial detainee's claim for deliberate indifference to medical needs derives from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment. *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

Plaintiff claims that when he first arrived at SRJ[2] on February 14, 2014, he complained to the receiving staff ("John Does #1&2") that "he had been involved in a physical altercation at the Federal Detention Center in Dublin in which he was attacked and was hit with an unidentified blunt object in the right temporal area of his head/face." Dkt. 1 at 8.[3] It is unclear when the attack

---

[2] At an unknown date, Plaintiff was transferred to Glenn Dyer. Dkt. 1 at 1.

[3] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Plaintiff.

3

occurred, but Plaintiff claims that on February 12, 2014, he was examined at ValleyCare Emergency Department ("ValleyCare"), where three x-rays were taken of his injuries. *Id.* Plaintiff added that ValleyCare Physician Howard Yoshioka recommended that Plaintiff would "need reconstructive surgery in order to set the fracture and correct the cosmetic disfigurement/deformity on his face." *Id.* Plaintiff informed SRJ staff that there was

> a necessary surgical procedure that would place a metal plate in [his] face to set the [fracture] and that this would be performed by a[n] Oral Maxiofacial Surg[e]on within the next few days and it was "important" that ths surgery happen within days, before the bone(s) begin to heal and surgery is no longer a reasonable option.

*Id.* Plaintiff claims that he was also given "a prescription for Norco 5 mg in 'adequate amounts' in order to control and manage the pain consistent with his injuries until [he] could be transported to a specialist, who[] would perform the needed surgical intervention and prescribe further medication for pain management." *Id.* Plaintiff claims that jail officials requested -- and eventually received -- paperwork from ValleyCare confirming Plaintiff's allegations relating to his injuries and the recommended treatment. *Id.* at 10-11. Plaintiff claims that Defendants, specifically the following employees of CHI: Defendants Magat, Melgarejo, Beltran, Sadri, and Cerise, were fully informed about Plaintiff's aforementioned allegations, including his need for surgical intervention and medication for pain management. *Id.* at 13-23. However, Plaintiff claims that his injuries were considered "routine;" therefore, he was not immediately referred to be seen by a specialist, nor was he properly prescribed pain medication. *Id.* In fact, Plaintiff claims there was a seven-day time period -- from February 18, 2014 through February 25, 2014 -- during which he was "COMPLETELY unmedicated for pain" even after requesting pain medication. *Id.* at 16-17. Further, twenty-eight days past before Plaintiff was transported on March 12, 2014 to the Highland Alameda County Hospital - Oral Maxiofacial Surgery Clinic where the "surgical team" examined him and "elected not to operate [due to] too much risk." *Id.* at 23. As a result, Plaintiff claims he has suffered "permanent injur[ies] and extreme pain." *Id.* at 25. Plaintiff adds that on April 30, 2014, he was diagnosed with having developed "myofacial pain associated with TMD (Temporal Muscle or Mandible Disorder)." *Id.* at 26.

4

1    Plaintiff filed CDC Form 602 inmate appeals[4] relating to the aforementioned acts of alleged
2 deliberate indifference.  Plaintiff states a deliberate indifference claims against Defendant Sing who
3 reviewed Plaintiff's appeals and did not remedy the constitutional violation.  Instead, Plaintiff claims
4 that Defendant Sing made a "blatant attempt to cover-up the violations" by "falsif[ying] [Plaintiff's]
5 medical record by entering fabricated information by claiming the only reason for no medical
6 treatment/inadequate medical treatment was . . . due to an insurance issue." *Id.* at 25-26.

7    On May 21, 2014, Plaintiff claims he had a "courtesy appointment" with Defendant
8 Aramburo, who failed to properly examine Plaintiff or recommend the required treatment for his
9 pain management. *Id.* at 29-32.

10   Plaintiff's allegation that he suffers from severe pain due to his facial fracture (for which a
11 referral to a specialist and surgery was originally ordered), supports an inference that he has serious
12 medical needs.  Liberally construed, Plaintiff's allegations that the aforementioned Defendants failed
13 to provide him with adequate medical treatment states a cognizable deliberate indifference claim
14 against Defendants Magat, Melgarejo, Beltran, Sadri, Cerise, Sing and Aramburo.  Accordingly, this
15 due process claim may proceed against these Defendants.

### C. Claims Against Doe Defendants

17   In the body of his complaint, Plaintiff identifies various Doe Defendants whose names he
18 intends to learn through discovery, including Intake/Receiving Staff "John Doe #1"; CHI Charge
19 Nurse "John Doe #2"; and "PM Pill Call Nurse "John Doe #3." Dkt. 1 at 7, 16.  The use of Doe
20 Defendants is not favored in the Ninth Circuit. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.
21 1980).  However, where the identity of alleged defendants cannot be known prior to the filing of a
22 complaint the plaintiff should be given an opportunity through discovery to identify them. *Id.*
23 Failure to afford the plaintiff such an opportunity is error. *See Wakefield v. Thompson*, 177 F.3d
24 1160, 1163 (9th Cir. 1999).

25   Accordingly, any claims against these Doe Defendants are DISMISSED from this action

---

[4] In California, prison regulation requires the prisoner "to lodge his administrative complaint on [a] CDC form 602 and 'to describe the problem and action requested.'" *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010) (quoting Cal. Code Regs. tit. 15 § 3084.2(a)).

without prejudice. Should Plaintiff learn these Doe Defendants' identities through discovery, he may move to file an amendment to the complaint to add them as named defendants and link them to specific constitutional violations. *See Brass v. County of Los Angeles*, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

### D. Remaining Claims

Plaintiff has also alleged a claim of harassment and retaliation against Defendants Anderson, Tilley, Rojas, and Comfort. Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-84 (1977). The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. *Id.* at 287. Prisoners may not be retaliated against for exercising their right of access to the courts. *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). The right of access to the courts extends to established prison grievance procedures. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001). Thus, a prisoner may not be retaliated against for using such procedures. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

Here, Plaintiff alleges that on May 17, 2014, Defendants Anderson and Tilley searched his cell, but did not find any contraband. *Id.* at 35-36. However, two doors down from Plaintiff, in inmate Brown's cell, they found "6 unknown capsules." *Id.* at 36. Defendant Comfort, a nurse, identified the medication as "Gabapentin (an anti-seizure capsule)" and "identified Plaintiff as the only inmate in D-Pod currently receiving Gabapentin and identified Plaintiff as a "management problem who likes to file frivolous grievances." *Id.* Inmate Brown admitted to obtaining the medication from another inmate. *Id.* at 36. Plaintiff denied providing inmate Brown with the medication. *Id.* at 37-38. Plaintiff then claims that Defendant Anderson directed Defendant Tilley to "write a false [disciplinary] report in an effort to ensure Plaintiff [would] be found guilty and lo[]se visiting, commissary and phone privledges [sic] in retaliation for [Plaintiff's filing] grievances." *Id.* at 38-39. Plaintiff claims that he complained about the false report to Defendant

6

1  Rojas. *Id.* at 40.  Plaintiff also alleges a supervisory liability claims against Defendant Ladner for
2  allowing the false reports to be generated.  *Id.* at 42.

3        Here, Plaintiff's harassment/retaliation claims involve different Defendants committing acts
4  separate and distinct from the other claim raised in this action (deliberate indifference).  The claims
5  of deliberate indifference and harassment/retaliation are unrelated by fact or law, and therefore fall
6  afoul of Federal Rule of Civil Procedure 20.  Under Federal Rule of Civil Procedure 20, persons
7  may be joined in one action as defendants only if "(A) any right to relief is asserted against them
8  jointly, severally, or in the alternative with respect to or arising out of the same transaction,
9  occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to
10  all defendants will arise in the action."  Fed. R. Civ. Proc. 20.

11        Accordingly, the sole claim that shall proceed here is the one that occurred earliest in time,
12  specifically, Plaintiff's claim that Defendants Magat, Melgarejo, Beltran, Sadri, Cerise, Sing and
13  Aramburo were deliberately indifferent to his serious medical needs from February 2014 through
14  August 2013.  As explained above, when liberally construed, this claim is cognizable under § 1983.
15  The remaining harassment/retaliation claims against Defendants Anderson, Tilley, Rojas, and
16  Comfort and the supervisory liability claim against Defendant Ladner are DISMISSED without
17  prejudice to Plaintiff bringing them in separate actions, either in state or federal court.

### III.  Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel.  He requests the Court appoint counsel based upon the complexity of the case and his limited access to the law library.  However, there is no constitutional right to counsel in a civil case.  *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981).  28 U.S.C. § 1915 confers on a district court only the power to "request" that counsel represent a litigant who is proceeding *in forma pauperis*.  28 U.S.C. § 1915(e)(1).  This does not give the courts the power to make "coercive appointments of counsel."  *Mallard v. United States Dist. Court*, 490 U.S. 296, 310 (1989).

The Court may ask counsel to represent an indigent litigant under section 1915 only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the

7

likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997); *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986). Both of these factors must be viewed together before reaching a decision on a request for counsel under section 1915. *Id.* Neither the need for discovery, nor the fact that the *pro se* litigant would be better served with the assistance of counsel, necessarily qualify the issues involved as complex. *Rand*, 113 F.3d at 1525 (where plaintiff's pursuit of discovery was comprehensive and focused and his papers were generally articulate and organized, district court did not abuse discretion in denying request for counsel).

Because Plaintiff has adequately presented his claims, there are no exceptional circumstances presented requiring appointment of counsel. Accordingly, his motion for appointment of counsel (Dkt. 3) is DENIED. This does not mean, however, that the Court will not consider appointment of counsel at a later juncture in the proceedings; that is, after Defendants have filed a dispositive motion such that the Court will be in a better position to consider the procedural and substantive matters at issue.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1.   Plaintiff's claims of injunctive relief from the conditions of his confinement at either SRJ or Glenn Dyer are DISMISSED as moot.

2.   Plaintiff states a cognizable due process claim that Defendants Magat, Melgarejo, Beltran, Sadri, Cerise, Sing and Aramburo were deliberately indifferent to his serious medical needs.

3.   Plaintiff's claims against the Doe Defendants are DISMISSED from this action without prejudice.

4.   The remaining harassment/retaliation claims against Defendants Anderson, Tilley, Rojas, and Comfort and the supervisory liability claim against Defendant Ladner are DISMISSED without prejudice to Plaintiff bringing them in separate actions, either in state or federal court.

5.   The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of

Service of Summons, two copies of the Waiver of Service of Summons, a copy of the complaint and all attachments thereto (Dkt. 1), a Magistrate Judge jurisdiction consent form, and a copy of this Order to the following Defendants, who are employees at **Corizon Health, Inc.: CHI Medical Doctors M. Magat, Melgarejo, Tan Sing, and Jose Aramburo; CHI Nurse Practitioner Spring Cerise; as well as CHI Registered Nurses Corazon V. Beltran and Maria Sadri.** The Clerk of the Court shall also mail a copy of the complaint and a copy of this Order to the Alameda County Counsel's Office in San Francisco. Additionally, the Clerk shall mail a copy of this Order to Plaintiff.

6. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause be shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the date on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due **sixty (60) days** from the date on which the request for waiver was sent or **twenty (20) days** from the date the waiver form is filed, whichever is later. **Defendants shall also respond to the Notice of Assignment of Prisoner Case to a United States Magistrate Judge for Trial by filing a consent/declination form on the date the Answer is due.**

7. Defendants shall answer the complaint in accordance with the Federal Rules of Civil Procedure. The following briefing schedule shall govern dispositive motions in this action:

    a.    No later than **sixty (60) days** from the date their answer is due, Defendants

shall file a motion for summary judgment or other dispositive motion. The motion must be supported by adequate factual documentation, must conform in all respects to Federal Rule of Civil Procedure 56, and must include as exhibits all records and incident reports stemming from the events at issue. A motion for summary judgment also must be accompanied by a *Rand*[4] notice so that Plaintiff will have fair, timely and adequate notice of what is required of him in order to oppose the motion. *Woods v. Carey*, 684 F.3d 934, 935 (9th Cir. 2012) (notice requirement set out in *Rand* must be served concurrently with motion for summary judgment). A motion to dismiss for failure to exhaust available administrative remedies must be accompanied by a similar notice. However, the Court notes that under the *new* law of the circuit, in the rare event that a failure to exhaust is clear on the face of the complaint, Defendants may move for dismissal under Rule 12(b)(6) as opposed to the previous practice of moving under an unenumerated Rule 12(b) motion. *Albino*, 747 F.3d at 1166 (overruling *Wyatt*, 315 F.3d at 1119, which held that failure to exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), should be raised by a defendant as an unenumerated Rule 12(b) motion). Otherwise if a failure to exhaust is *not* clear on the face of the complaint, Defendants must produce evidence proving failure to exhaust in a motion for summary judgment under Rule 56. *Id.* If undisputed evidence viewed in the light most favorable to Plaintiff shows a failure to exhaust, Defendants are entitled to summary judgment under Rule 56. *Id.* But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary proceeding. *Id.* at 1168.

If Defendants are of the opinion that this case cannot be resolved by summary judgment, they shall so inform the Court prior to the date the summary judgment motion is due. All papers filed with the Court shall be promptly served on Plaintiff.

      b.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** after the date on which Defendants' motion is filed.

      c.      Plaintiff is advised that a motion for summary judgment under Rule 56 of the

---

[4] *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998).

10

Federal Rules of Civil Procedure will, if granted, end your case. Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradicts the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand*, 154 F.3d at 962-63.

Plaintiff also is advised that -- in the rare event that Defendants argue that the failure to exhaust is clear on the face of the complaint -- a motion to dismiss for failure to exhaust available administrative remedies under 42 U.S.C. § 1997e(a) will, if granted, end your case, albeit without prejudice. To avoid dismissal, you have the right to present any evidence to show that you did exhaust your available administrative remedies before coming to federal court. Such evidence may include: (1) declarations, which are statements signed under penalty of perjury by you or others who have personal knowledge of relevant matters; (2) authenticated documents -- documents accompanied by a declaration showing where they came from and why they are authentic, or other sworn papers such as answers to interrogatories or depositions; (3) statements in your complaint insofar as they were made under penalty of perjury and they show that you have personal knowledge of the matters state therein. As mentioned above, in considering a motion to dismiss for failure to exhaust under Rule 12(b)(6) or failure to exhaust in a summary judgment motion under Rule 56, the district judge may hold a preliminary proceeding and decide disputed issues of fact with regard to this portion of the case. *Albino*, 747 F.3d at 1168.

(The notices above do not excuse Defendants' obligation to serve similar notices again

concurrently with motions to dismiss for failure to exhaust available administrative remedies and motions for summary judgment. *Woods*, 684 F.3d at 935.)

        d.        Defendants shall file a reply brief no later than **fourteen (14) days** after the date Plaintiff's opposition is filed.

        e.        The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

    8.    Discovery may be taken in this action in accordance with the Federal Rules of Civil Procedure. Leave of the Court pursuant to Rule 30(a)(2) is hereby granted to Defendants to depose Plaintiff and any other necessary witnesses confined in prison.

    9.    All communications by Plaintiff with the Court must be served on Defendants or their counsel, once counsel has been designated, by mailing a true copy of the document to them.

    10.    It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the Court informed of any change of address and must comply with the Court's orders in a timely fashion. Pursuant to Northern District Local Rule 3-11 a party proceeding *pro se* whose address changes while an action is pending must promptly file a notice of change of address specifying the new address. *See* L.R. 3-11(a). The Court may dismiss without prejudice a complaint when: (1) mail directed to the *pro se* party by the Court has been returned to the Court as not deliverable, and (2) the Court fails to receive within sixty days of this return a written communication from the *pro se* party indicating a current address. *See* L.R. 3-11(b).

    11.    Extensions of time are not favored, though reasonable extensions will be granted. Any motion for an extension of time must be filed no later than **fourteen (14) days** prior to the deadline sought to be extended.

    12.    Plaintiff's motion for appointment of counsel (Dkt. 3) is DENIED.

    13.    This Order terminates Docket No. 3.

IT IS SO ORDERED.

Dated: 11/24/14

DONNA M. RYU
United States Magistrate Judge